IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN IMMIGRATION LAWYERS
ASSOCIATION
1331 G Street, NW, Suite 300
Washington, DC 20005

        Plaintiff,

                Civil Action No. _____

      v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES
Office of the Chief Counsel
20 Massachusetts Avenue NW
Washington, DC 20529

and

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY
Office of the General Counsel
245 Murray Lane, SW
Mail Stop 0485
Washington, DC 20528-0485

        Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### <u>Introduction</u>

1.      This Action seeks to compel United States Citizenship and Immigration Services (USCIS), a component of the United States Department of Homeland Security (DHS), to disclose records that the American Immigration Lawyers Association (AILA) sought in two requests under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, relating to USCIS' processing of nonimmigrant visa petitions under 8 U.S.C. § 1101(a)(15)(H)(i)(b) (H-1B visa).

Plaintiff AILA seeks declaratory, injunctive, and other appropriate relief in view of Defendants' unlawful withholding of these documents.

2.      An H-1B visa is a highly competitive nonimmigrant visa that permits a foreign worker in a specialty occupation—such as science, engineering, and information technology—to temporarily work in the United States. Each fiscal year (FY), a maximum of 85,000 H-1B visas may be issued.  8 U.S.C. §§ 1184(g)(1)(A) and (5).  For the past six years, the number of available H-1B visas has been exhausted within the first week that employers can file H-1B petitions with USCIS.  In April 2018, USCIS received more than 190,000 petitions for H-1B visas that will be available for FY 2019.

3.      Plaintiff AILA is a voluntary bar association of more than 15,000 attorneys and law professors practicing, researching, and teaching in the field of immigration and nationality law.  In 2017, AILA began receiving reports from its members indicating an increasing number of "requests for evidence" (RFE) issued by USCIS in connection with H-1B visa petitions. Subsequently, reports from AILA members indicated an increase in the rate of denials of these petitions.  Concerned that these trends indicated a shift in USCIS adjudication standards or practices, AILA filed a FOIA request on September 21, 2017 (the 2017 FOIA Request), seeking documents related to USCIS' consideration of wage levels, wage surveys, and prevailing wage determinations in the H-1B adjudication process.  On April 24, 2018, AILA filed a second FOIA request (the 2018 FOIA Request) seeking records related to USCIS' determination of what constitutes a "specialty occupation."

4.      To date, USCIS has not determined whether it will comply with either request, nor has it produced any records, in violation of FOIA.  *See* 5 U.S.C. § 552(a)(6)(A)(i).

**Jurisdiction and Venue**

5.      This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C.

§ 552(a)(4)(B) and 28 U.S.C. § 1331.

6.      Venue properly rests with this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and

28 U.S.C. § 1391(e)(1)(C) because AILA's principal place of business is in the District of

Columbia.

7.      AILA has exhausted all mandated administrative remedies in connection with

both FOIA requests.

**The Parties**

8.      AILA is a tax-exempt, not-for-profit professional and educational association,

organized under § 501(c)(6) of the Internal Revenue Code, whose principal place of business is

at 1331 G Street, N.W., Washington, DC 20005.

9.      Founded in 1946, AILA is a nonpartisan association of more than 15,000

attorneys and law professors who practice and teach immigration law.  Its mission includes the

advancement of the law pertaining to immigration and nationality and the facilitation of justice in

the field.  AILA regularly provides both its members and the public with up-to-date information

about the policies and practices of the immigration agencies, including USCIS.  This information

enhances its members' ability to represent their clients, and the public's ability to understand

how our immigration laws are administered.

10.     Defendant DHS is a department of the executive branch of the United States

government and is an agency within the meaning of 5 U.S.C. § 552(f).

11.     DHS is responsible for interpreting, implementing and enforcing federal

immigration laws.

12.     Upon information and belief, DHS has possession and control over the records

sought by AILA in the 2017 and 2018 FOIA Requests, either directly or through its component

USCIS.

13.     Defendant USCIS is a component of Defendant DHS and is an agency within the

meaning of 5 U.S.C. § 552(f).

14.     USCIS is responsible, among other duties, for adjudicating H-1B petitions,

including establishing standards for use by its officers in adjudicating such petitions.

15.     Defendant USCIS has possession of and control over records requested by

Plaintiff.

**Background**

*H-1B visas*

16.      Each fiscal year, Congress allots 65,000 new H-1B visas for individuals seeking

temporary positions in a "specialty occupation."  8 U.S.C. § 1184(g)(1)(A)(vii).  An additional

20,000 H-1B visas are allotted for foreign workers with advanced degrees and those employed at

an institution of higher education or a governmental or nonprofit research organization.  8 U.S.C.

§ 1184(g)(5).

17.     For the past six years, the demand for H-1B visas has outstripped the supply.  *See*

USCIS, Number of H-1B Petition Filings FY 2007-2017, *available at*

https://www.uscis.gov/sites/default/files/USCIS/Resources/Reports%20and%20Studies/Immigrat

ion%20Forms%20Data/BAHA/h-1b-2007-2017-trend-tables.pdf.  In April 2018, USCIS

received 190,098 visa petitions for the 85,000 H-1B visas available in FY 2019.  USCIS

Completes the H-1B Cap Random Selection Process for FY 2019 (last updated April 12, 2018),

https://www.uscis.gov/news/alerts/uscis-completes-h-1b-cap-random-selection-process-fy-2019.

As such, USCIS' policies, standards and practices with respect to how it adjudicates H-1B visa

petitions are of vital importance to members of the immigration bar, to U.S. employers seeking

to supplement their workforce with H-1B nonimmigrants, and to the general public.

### DOL Labor Condition Application and Prevailing wage determinations

18.     To protect the wages and working conditions of  American workers, Congress

requires U.S. employers seeking to employ an H-1B worker to file a Labor Condition

Application (LCA) with the Department of Labor (DOL), attesting, among other things, that the

employer is offering a wage that is the higher of either the "prevailing wage level for the

occupational classification in the area of employment," or the actual wage level that the

petitioning employer pays to employees with similar experience and qualifications for the job.  8

U.S.C. § 1182(n)(1)(A)(i).

19.     To determine the prevailing wage for a position, employers either submit a

request for a Prevailing Wage Determination to DOL or utilize  the DOL's Foreign Labor

Certification Data Center Online Wage Library or a private wage survey from an independent

source to establish the appropriate wage for the position, based on the job duties described, the

education, training, and experience required to perform the position, and the geographic location

where the individual will work.  *See Prevailing Wages (PERM, H-2B, H-1B, H-1B1 and E-3)*,

DOL, Off. of Foreign Labor Certification,

https://www.foreignlaborcert.doleta.gov/pwscreens.cfm (OFLC Prevailing Wage Guidance).

20.     DOL prevailing wages are based on data collected through biannual surveys of

employers.  *Id.*  Pursuant to 8 U.S.C. § 1182(p)(4), these surveys classify positions by "at least 4

levels of wages commensurate with experience, education, and the level of supervision."  Level I

wages are those paid to closely-supervised entry-level employees who perform routine tasks,

while Level IV wages are for the most "fully competent" employees, generally those who have

management or supervisory responsibilities.  *See* Dep't of Labor, Emp't & Training Admin.,

*Prevailing Wage Determination Policy Guidance: Nonagricultural Immigration Programs* (Nov.

2009), at 7 (describing each wage level), *available at*

http://www.flcdatacenter.com/download/NPWHC_Guidance_Revised_11_2009.pdf (DOL

Prevailing Wage Determination Policy Guidance); *see also* Amy Marmer Nice, *Wages and*

*High-Skilled Immigration: How the Government Calculates Prevailing Wages and Why It*

*Matters* (Dec. 14, 2017), at 7, *available at*

https://www.americanimmigrationcouncil.org/research/wages-and-high-skilled-immigration-

how-government-calculates-prevailing-wages.

21.     When an employer requests a Prevailing Wage Determination, DOL evaluates the

position as described in the application, matches it to the most similar position covered in its

surveys, assigns the position a wage level, and then determines the prevailing wage for the

geographic location where the individual will work.  *See* DOL Prevailing Wage Determination

Policy Guidance at 7-8.

22.     Whether established through a DOL-issued prevailing wage determination, the

Foreign Labor Certification Data Center Online Wage Library or an independent wage survey,

both the prevailing wage, and the wage offered to the prospective H-1B nonimmigrant are

notated on the LCA Form ETA-9035 and filed with DOL. *See generally* 20 C.F.R. Part 655,

Subpart H.

23.     DOL reviews and certifies the LCA if all items on the form "have been

completed, the form is not obviously inaccurate, [and if not filed electronically] … contains the

signature of the employer or its authorized agent or representative…." 20 C.F.R. §655.740(a)(1).

### *Specialty Occupations*

24.     A "specialty occupation" is one that requires "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)

25.     USCIS reviews H-1B visa petitions to determine whether the job qualifies as a specialty occupation, and whether the beneficiary of the H-1B petition is qualified to perform the job duties required by the specialty occupation. 8 C.F.R. § 214.2(h)(4)(i)(B)(2). In making this determination, USCIS adjudicators routinely rely upon the DOL's Occupational Outlook Handbook, a resource revised every two years which includes detailed information on a wide variety of U.S. jobs. *See, e.g.*, USCIS, *Specialty Occupation as Described in VSC H-1B Guide* (2007) (instructing USCIS employees at the Vermont Service Center that the first step in determining if a position is a specialty occupation is to "refer to the Occupational Outlook Handbook"), *available at* https://www.uscis.gov/sites/default/files/USCIS/About%20Us/Electronic%20Reading%20Room/Policies_and_Manuals/H1-B_Training_Material_and_Guidance.pdf.

### *Changing USCIS policies and practices*

26.     On March 31, 2017, USCIS rescinded a 16-year-old policy which generally recognized the position of computer programmer as a specialty occupation. *See* USCIS Memorandum, *Rescission of the December 22, 2000 'Guidance memo on H1B computer related Positions'* (Mar. 31, 2017) (Rescission Memorandum), available at: https://www.uscis.gov/sites/default/files/files/nativedocuments/PM-6002-0142-H-1BComputerRelatedPositionsRescission.pdf. Citing changing trends in the employment of computer programmers, the Rescission Memorandum concluded, among other things, that "it is

7

improper to conclude [] that USCIS would 'generally consider the position of programmer to qualify as a specialty occupation.'" *Id.* at 2.

27.     In a footnote, the Rescission Memorandum also instructed USCIS adjudicators to consider the wage level designation in the LCA to ensure that it corresponds to the proffered position. *Id. at n. 6.*

28.     Following the release of the Rescission Memorandum, petitioning employers and AILA attorneys reported a spike in RFEs questioning whether a position assigned a Level I wage could qualify as a specialty occupation.  AILA members also reported a spike in RFEs and denials relating to the classification of a position as a specialty occupation, in situations where the agency had previously approved visa petitions for similar positions, and when the agency had previously approved a petition for the same individual working in the same position for the same employer.

29.     According to data obtained by Thomson Reuters, between January 1 and August 31, 2017, USCIS issued 85,000 requests for evidence on H-1B petitions; "a 45 percent increase over the same period last year."  *See* Yeganeh Torbati, *Trump Administration Red Tape Tangles up Visas for Skilled Foreigners, Data Shows*, Thomson Reuters (Sept. 20, 2017).

**AILA's 2017 FOIA Request**

30.     On September 21, 2017, AILA submitted its first FOIA request to USCIS, asking for documents related to the impact that DOL-determined wage levels, private wage surveys, and actual wages had on USCIS' adjudication of H-1B petitions.  AILA also requested records related to the Rescission Memorandum.  A copy of the 2017 FOIA Request is attached hereto as **Exhibit A**.

31.     The 2017 FOIA Request sought four categories of records:

(a) Records that describe, explain, or interpret how the wage level (i.e., Level 1, Level 2, Level 3, or Level 4), as identified in the Foreign Labor Certification Data Center Online Wage Library (www.flcdatacenter.com) and annotated (in Roman numerals I, II, III, or IV) on the Labor Condition Application, may impact the adjudication of petitions for H-1B classification.

(b) Records that describe, explain, or interpret how the use of a private wage survey, including an "N/A" annotation on the Labor Condition Application in lieu of an assigned wage level, may impact the adjudication of petitions for H-1B classification.

(c) Records that describe, explain, or interpret how the wage/salary offered to the beneficiary by the employer may impact the adjudication of petitions for H-1B classification, including, but not limited to, the relevance of any and all Department of Labor guidance on prevailing wage determinations.

(d) Records that describe, explain, or interpret the rescission of the INS Memorandum, "Guidance Memo on H-1B Computer Related Positions," NSC 70/44.4 (Dec. 12, 2000), and the implementation of the USCIS Policy Memorandum, "Rescission of the December 22, 2000 'Guidance memo on H-1B computer related positions,'" PM-602-0142 (Mar. 31, 2017).

32.     On September 27, 2017, USCIS wrote to AILA, acknowledging receipt of the 2017 FOIA request, assigning it control number COW2017001165, invoking the statutory ten-day extension for responding to the request (5 U.S.C. § 552(a)(6)(B)), and informing AILA that the latter would be responsible for document production costs over a certain amount.  A copy of this correspondence is attached hereto as **Exhibit B**.

33.     On November 13, 2017, AILA, joined by the American Immigration Council, submitted a new FOIA Request in which it withdrew the September 21, 2017 FOIA request.  The only change in the new FOIA request was that it included a request for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k)(1).  A copy of this new FOIA Request is attached hereto as **Exhibit C**.

34.     On November 21, 2017, USCIS responded to the new FOIA request, assigning it control number COW2017001435, and suggesting that, rather than withdraw the original FOIA request, AILA amend it to include the fee waiver request.  USCIS's email is attached hereto as **Exhibit D**.

35.     On November 28, 2017, AILA responded to USCIS, agreeing to amend rather than withdraw the original FOIA request.  **Exhibit E**.  In response, USCIS closed the second FOIA request (control number COW2017001435) and granted the fee waiver in connection with the original, now amended, request (control number COW2017001165).  **Exhibit F**.  USCIS also indicated that it had requested records from multiple offices and would process them once received.  *Id*.

36.     Since then, AILA has heard nothing further from USCIS regarding this FOIA request.  USCIS is well beyond its 30-day deadline for responding—the normal 20-day statutory period plus the ten-day extension that it invoked.  5 U.S.C. § 552(a)(6)(B).

37.     Because USCIS has not responded within the required period, AILA was not required to file an administrative appeal prior to filing suit.  *Citizens for Responsibility and Ethics in Wash. v. FEC*, 711 F.3d 180, 186 (D.C. Cir. 2013) (holding that an administrative appeal is not necessary if "within the relevant time period" the agency fails to "inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions.").

38.     Defendant USCIS's failure to respond with respect to the scope of the documents that it will produce and/or withhold, or to produce the requested records violates FOIA and is impeding AILA's efforts to assess and inform its members and the public about USCIS adjudication policy regarding H-1B petitions.

## AILA's 2018 FOIA Request

39.     After AILA filed its 2017 FOIA Request, its members continued to report what appear to be changing adjudicatory practices from USCIS.  AILA received multiple reports that USCIS was requesting additional evidence and denying H-1B petitions in cases that previously would have been approved, on the ground that the position was not a specialty occupation.  In addition, AILA received numerous reports from its members regarding the denial of H-1B extensions, where a previous petition filed by the same employer, on behalf of the same beneficiary, for the same position had been approved.

40.     On April 24, 2018, AILA submitted the 2018 FOIA Request, seeking records produced on or after January 1, 2015 pertaining to how USCIS determined what constitutes a specialty occupation.  A copy of the 2018 FOIA request is attached hereto as **Exhibit G**.

41.     AILA's 2018 FOIA request sought two categories of records.

(a) USCIS standard operating procedures, memoranda, correspondence, guidance, checklists, and training materials, created, circulated or discussed on or after January 1, 2015, regarding the processes, procedures, and legal standards relating to the adjudication of H-1B (Form I-129) nonimmigrant petitions, *including but not limited to*:

    (i) Records that describe, explain, or interpret the term "specialty occupation" under [8 U.S.C. § 1184(i)], including, but not limited to, records that describe, explain, or interpret the language "body of highly specialized knowledge," and/or "specific specialty (or its equivalent)" under [8 U.S.C. § 1184(i)(1)].

    (ii) Records that describe, explain, or interpret how adjudicators use information contained in Department of Labor resources, including, but not limited to, the Bureau of Labor Statistics' Occupational Outlook Handbook, in determining whether a position is a "specialty occupation."

42.     Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k)(1), AILA also requested a waiver of all fees related to its 2018 FOIA Request.  **Exhibit G**.

43.     On April 24, 2018, USCIS' computer system generated an automatic "courtesy reply" which stated that it did "not replace the Acknowledgement Letter which will be

sent to you once your request has been scanned into our FOIA processing system." **Exhibit H**. To date, USCIS has sent no further correspondence to AILA concerning this FOIA request and has produced no records in response to it.

44.     Because USCIS has not responded within the required period, AILA was not required to file an administrative appeal prior to filing suit.  *Citizens for Responsibility and Ethics in Wash.*, *supra*.

45.     Defendant USCIS's failure to respond with respect to the scope of the documents that it will produce and/or withhold, or to produce the requested records violates FOIA and is impeding AILA's efforts to assess and inform its members and the public about USCIS adjudication policy regarding H-1B petitions.

**AILA's Entitlement to a Waiver of Processing Fees**

46.      USCIS has not made a decision with respect to AILA's request for a fee waiver for its 2018 FOIA Request.  AILA is entitled to a fee waiver because, as detailed in its 2018 FOIA Request, disclosure of the requested records is "likely to contribute significantly to public understanding of the operations or activities of the government" and "is not primarily in the commercial interest of the requestor."  5 U.S.C. § 552(a)(4)(A)(iii).

47.     AILA has the capacity and intent to disseminate widely the requested information to the public, as set forth in its 2018 FOIA Request.  *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) (finding a fee waiver appropriate when the requester explained, in detailed and non-conclusory terms, how and to whom it would disseminate the information it received).

**FIRST CAUSE OF ACTION**

**Violation of Freedom of Information Act**
**for Failure to Respond within the Time Required**

48.     AILA repeats, alleges and incorporates the allegations in paragraphs 1- 47 above, as if fully set forth herein.

49.     Within 30 days of receipt of the 2017 FOIA Request (excluding Saturdays, Sundays, and legal public holidays) and 20 days of receipt of the 2018 FOIA Request, USCIS was required to determine whether to comply with the requests and to notify AILA of its determination and the reasons therefor and of its right to appeal any adverse determination.  5 U.S.C. §§ 552(a)(6)(A)(i) and (B).

50.     AILA has received no communication from USCIS that contains the notification required by 5 U.S.C. § 552(a)(6)(A)(i).

51.     Defendants' failure to respond within the statutory time limit violates 5 U.S.C. § 552(a)(6)(A), as well as the regulations promulgated thereunder.

## SECOND CAUSE OF ACTION

### Violation of the Freedom of Information Act for
### Failure to Grant Plaintiff's Public Interest Fee Waiver Request

52.     AILA repeats, alleges and incorporates the allegations in paragraphs 1 – 47 above, as if fully set forth herein.

53.     Based on the facts outlined above, AILA is entitled to a waiver of fees associated with responding to the 2018 FOIA Request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii).

54.     Pursuant to 5 U.S.C. § 552(a)(4)(A)(viii), AILA is independently entitled to a waiver of fees associated with searching for records responsive to the 2018 FOIA Request because (a) Defendants failed to respond to the 2018 FOIA Request within the statutory time limit, and (b) no unusual or exceptional circumstances (as defined in 5 U.S.C. § 552(a)(6)(B) and (C)) excuse Defendants' delay in responding.

55.     Defendants have constructively denied the fee waiver request by failing to make a decision within the statutory time frame.

56.     Defendants' denial of AILA's request for a fee waiver violates 5 U.S.C. §§ 552(a)(4)(A)(iii) and (viii) and the regulations promulgated thereunder.

## PRAYER FOR RELIEF

WHEREFORE, AILA requests that judgment be entered in its favor and against Defendants, and that the Court:

(a)     Declare that Defendants' failure to respond to AILA's 2017 and 2018 FOIA Requests within the statutory time limits and their failure to disclose such responsive records violate FOIA;

(b)     Order Defendants and any of Defendants' departments, components, other organizational structures, agents, or other persons acting for or on behalf of Defendants to conduct a prompt, reasonable search for records responsive to AILA's 2017 and 2018 FOIA Requests;

(c)     Enjoin Defendants and any of Defendants' departments, components, other organizational structures, agents, or other persons acting for or on behalf of Defendants from withholding records responsive to AILA's 2017 and 2018 FOIA Requests and order Defendants to promptly produce the same;

(d)     Order Defendants to waive the fees associated with AILA's 2018 FOIA Request;

(e)     Award AILA its reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

(f)     Grant all other such relief to AILA as the Court deems just and equitable.

Dated:  June 11, 2018

Respectfully submitted,


Mary Kenney (#1044695)
mkenney@immcouncil.org

Leslie K. Dellon (D.C. Bar #250316)
ldellon@immcouncil.org

AMERICAN IMMIGRATION COUNCIL
1331 G Street, NW, Suite 200
Washington, DC  20005
Telephone: (202) 507-7512
Fax: (202) 742-5619

*Attorneys for Plaintiff*
*American Immigration Lawyers Association*